**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RAHEEM HOWARD** | |
| | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 19-79-JWD-EWD** |
| **THE CITY OF BATON ROUGE, ET AL.** | |

**STATEMENT OF LEGAL PRINCIPLES RELEVANT TO PENDING
MOTIONS FOR SUMMARY JUDGMENT (DOCS. 142, 158)**

The following legal principles will be used by this Court in rendering oral reasons on the
pending motions for summary judgment in this case. (Docs. 142, 158.)

### I.    SUMMARY JUDGMENT STANDARD[1]

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil
Procedure. "The court shall grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the
assertion by[ ] citing to particular parts of materials in the record," or by "showing that the
materials cited do not establish the absence or presence of a genuine dispute, or that an adverse
party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Thus, "[a] movant for summary judgment need not set forth evidence when the nonmovant
bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987,
997 (5th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[W]e find no
express or implied requirement in Rule 56 that the moving party support its motion with affidavits
or other similar materials *negating* the opponent's claim.") (emphasis in original)). "The moving

---

[1] This standard is generally taken from *Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 361–62 (M.D. La. 2022)
(deGravelles, J.).

party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (citing *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (cleaned up). The non-mover's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (cleaned up).

Additionally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 (5th Cir. 1992)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (citing, *inter alia, Raugas*, 136 F.3d at 458). *See also Nissho–Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (it is not necessary "that the entire record in the case . . . be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion. Indeed, even if the moving party comes forward with an abundance of evidence supporting its theory of the case, the nonmoving party may nevertheless defeat the motion by countering with evidence of its own, which, if credited by the fact-finder, would entitle the nonmoving party to a verdict in its favor. Or, the non-moving party can defeat the motion by demonstrating that the evidence tendered by the moving party is itself laced with contradictions of [material] fact.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (cleaned up).

## II.    SECTION 1983 CLAIMS

### A.  Qualified Immunity Generally[2]

"Qualified immunity shields government officials performing discretionary functions from civil damages liability 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Crittindon v. LeBlanc*, 37 F.4th 177, 185 (5th Cir. 2022) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "Determining whether an officer is entitled to qualified immunity requires a two-step inquiry." *Id.* "First, we ask whether the officer's alleged conduct has violated a federal right. Second, we ask whether the right in question was clearly established at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Id.* at 185–86 (cleaned up). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity

---

[2] This section is generally taken from *Clark v. Hotard*, No. 22-326, 2026 WL 1693005, at *7 (M.D. La. June 11, 2026) (deGravelles, J.).

3

analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### B. Unlawful Arrest[3]

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (quoting U.S. Const. amend. IV). A warrantless arrest by a law officer is unreasonable under the Fourth Amendment if "there is [no] probable cause to believe that a crime has been or is being committed." *Id.* (citations omitted). "Probable cause . . . exists when the "totality of the facts and circumstances" within an officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (internal quotation and citation omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152 (citations omitted). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Id.* at 153 (citations omitted). "That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.*

### C. Manufactured Evidence

"Since *Franks v. Delaware*, 438 U.S. 154 [ ] (1978), it has been clearly established that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth'

---

[3] This section is substantially taken from *Imani*, 614 F. Supp. 3d at 361–62.

and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (quoting *Franks*, 438 U.S. at 155–56).

> In *Franks*, the Supreme Court observed that the warrant requirement is meant "to allow the magistrate to make an independent evaluation of the matter." [438 U.S. at 165]. It requires affiants to "set forth particular facts and circumstances underlying the existence of probable cause," including those that concern the reliability of the information and the credibility of the source to avoid "deliberately or reckless false statement[s]." *Id.*

> Still, "negligence alone will not defeat qualified immunity." [*Brewer v. Hayne*, 860 F.3d 819, 825 (5th Cir. 2017).] "[A] proven misstatement can vitiate an affidavit only if it is established that the misstatement was the product 'of deliberate falsehood or of reckless disregard for the truth.'" *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980) (quoting *Franks*, 438 U.S. at 171 [ ]). Recklessness requires proof that the defendant "'in fact entertained serious doubts as to the truth' of the statement." *Hart v. O'Brien*, 127 F.3d 424, 449 (5th Cir. 1997) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 [ ] (1968)), *abrogation on other grounds recognized by Spivey v. Robertson*, 197 F.3d 772, 775 (5th Cir. 1999).

*Id.*

"Significantly . . . , the Fifth Circuit in *Hart* made it clear that individuals other than the actual affiant may be held liable in this context, writing that:

> We agree with the reasoning of these circuit courts that a deliberate or reckless misstatement may form the basis for a *Franks* claim against a government official who is not the affiant. "The Fourth Amendment places restrictions and qualifications on the actions of the government generally, not merely on affiants." A governmental official violates the Fourth Amendment when he deliberately or recklessly provides false, material information for use in an affidavit in support of a search warrant, regardless of whether he signs the affidavit.

*Parttridge v. Panola Cnty., Miss.*, No. 24-343, 2026 WL 512142, at *24 (N.D. Miss. Feb. 24, 2026) (quoting *Hart*, 127 F.3d at 448–49 (citation omitted)). *See also Lee v. City of Midland*, No. 22-185, 2025 WL 2101975, at *9 (W.D. Tex. July 25, 2025) ("the Court notes that *Franks* liability

'is not limited to the person who prepared or signed the warrant affidavit.' Instead, liability can attach to any person directing the inclusion of false information in the affidavit, or any person who supplied false information for the purpose of compiling a warrant affidavit." (internal citation omitted) (citing *Hughes v. Garcia*, 100 F.4th 611, 620 (5th Cir. 2024)).

### D. Excessive Force

Again, "[t]he Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' This case concerns the 'seizure' of a 'person,' which can take the form of 'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." *Torres v. Madrid*, 592 U.S. 306, 311 (2021) (citing *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968)).

"The common law distinguished the application of force from a show of authority, such as an order for a suspect to halt. The latter does not become an arrest unless and until the arrestee complies with the demand." *Id.* "As the [Supreme] Court explained in [*California v. Hodari D.*, 499 U.S. 621 (1991)], '[a]n arrest requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority.'" *Id.* (quoting *Hodari D.*, 499 U.S. at 626) (emphasis in original). *See id.* at 322 (noting "the distinction between seizures by *control* and seizures by *force*."). The High Court continued:

> Unlike a seizure by force, a seizure by acquisition of control involves either voluntary submission to a show of authority or the termination of freedom of movement. A prime example of the latter comes from [*Brower v. County of Inyo*], where the police seized a driver when he crashed into their roadblock. [489 U.S. 593, 598–99 (1989)]; see also, *e.g.*, *Scott v. Harris*, 550 U.S. 372, 385 [ ] (2007) (ramming car off road); *Williams* v. *Jones*, Cas. t. Hard. 299, 301, 95 Eng. Rep. 193, 194 (K. B. 1736) (locking person in room). Under the common law rules of arrest, actual control is a necessary element for this type of seizure. See Wilgus, Arrest Without a Warrant, 22 Mich. L. Rev. 541, 553 (1924). Such a seizure requires that "a person be stopped by the very instrumentality set in motion or put

> in place in order to achieve that result." *Brower*, 489 U.S., at 599 [ ]. But that requirement of control or submission never extended to seizures by force. See, *e.g.*, *Sandon*, El. Bl. & El., at 940–941, 120 Eng. Rep., at 760.

*Id.* at 322.

Thus, absent force, "there is no seizure where the subject does not submit to a show of police authority; in that circumstance, the person is not seized until he is successfully stopped." *United States v. Ferguson*, 816 F. App'x 991, 992–93 (5th Cir. 2020) (citing *Hodari D.*, 499 U.S. at 626). *See id.* at 993 ("Thus, just as the juvenile who ran at the sight of approaching police in *Hodari D.*, *id*. at 622–23, 629 [ ], Ferguson, who fled in response to a police command to place his hands in the air, was not seized at any point prior to his post-flight physical apprehension.").

Once a seizure occurs, "[t]o prevail on an excessive force claim, a plaintiff must establish: '(1) injury[,] (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (Dennis, J.) (quoting , *inter alia*, *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)). For more information on the standard for such claims, *see Clark*, 2026 WL 1693005, at *7–8.

### E.  Clearly Established Law[4]

"Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). "Clearly established law is determined by controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id.* (citing *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019)). "For

---

[4] This section is substantially taken from *Clark*, 2026 WL 1693005, at *9.

conduct to be objectively unreasonable in light of clearly established law, there need not be a case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* at 173–74 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017); *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

> Specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. . . . Sufficiently specific precedent involving similar facts can help move a case beyond the otherwise hazy border between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful. Otherwise, qualified immunity protects actions in the hazy border between excessive and acceptable force. Thus, qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. . . . In short, when properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. Consequently, qualified immunity is justified unless *no* reasonable officer could have acted as the defendant officers did here, or *every* reasonable officer faced with the same facts would *not* have [acted as the defendant officers did].

*Id.* at 174 (cleaned up).

### F. *Monell* Liability[5]

#### 1. *Generally*

"An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent. To determine whether a public official is liable in his official capacity, the Court looks to the jurisprudence discussing whether a municipality or local government entity is liable under section 1983." *Romain v. Governor's Office of Homeland Sec.*, No. 14-660, 2016 WL 3982329, at *6 (M.D. La. July 22, 2016) (citations and quotations omitted).

---

[5] The following law is generally taken from *Jordan v. Gautreaux*, 593 F. Supp. 3d 330, 353–56 (M.D. La. 2022) (deGravelles, J.), except the law on ratification, which comes from *Imani*, 614 F. Supp. 3d at 364–65.

"Section 1983 offers no *respondeat superior* liability." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). "Municipalities face § 1983 liability 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . .'" *Id.* (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). That is, "[a] municipality is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). "To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Id.* (quoting *Monell*, 436 U.S. at 691). The Plaintiff must allege "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* at 541–42 (cleaned up).

### 2. *Official Policy*

"A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.), *on reh'g*, 739 F.2d 993 (5th Cir. 1984). "Official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or

> employees of a municipality do not render the municipality liable
> under § 1983 unless they execute official policy as above defined.

*Id.*

With respect to practices and customs: "A pattern is tantamount to official policy when it is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579). "Where prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Id.* (quoting *Webster*, 735 F.2d at 842). "It is thus clear that a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Id.* at 850–51 (quoting *Piotrowski*, 237 F.3d at 582 (citations omitted)). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Id.* at 851 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

"A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)). Thus, in *Pineda*, the Fifth Circuit held that eleven instances of warrantless entry did not support a pattern of unconstitutional warrantless entry. *Pineda*, 291 F.3d at 329. In *Peterson*, the Fifth Circuit found that twenty-seven complaints of excessive force between 2002 and 2005 were insufficient to constitute a pattern, as almost all of the incidents involved "small crimes," and the police force was large. *Peterson*, 588 F.3d at 851–52.

10

### 3.  *Moving Force of Constitutional Violation*

"The third prong requires a plaintiff to prove 'moving force' causation." *Valle*, 613 F.3d at 542. "To succeed, 'a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Id.* (quoting *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). "That is, 'the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.'" *Id.* (quoting *Brown*, 520 U.S. at 411). "Deliberate indifference is a high standard— 'a showing of simple or even heightened negligence will not suffice.'" *Id.* (quoting *Piotrowski*, 237 F.3d at 579).

Additionally, "Plaintiffs must meet a heightened standard of causation in order to hold a municipality liable under § 1983." *Id.* at 546 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391–92 (1989)). Plaintiffs must show that the municipal policy was the "'moving force' that caused the specific constitutional violation." *Id.* (citing *Brown v. Bryan Cty, Okl.*, 219 F.3d 450, 461 (5th Cir. 2000)). "In other words, the plaintiff must establish a 'direct causal link' between the municipal policy and the constitutional injury." *Id.* (citing *Brown*, 520 U.S. at 404, 117 S.Ct. 1382).

### 4.  *Failure-To Claims and Deliberate Indifference*

To state a claim against a municipality for failure to train, a "plaintiff must show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Valle*, 613 F.3d at 544 (citation omitted). "All failure to act claims, such as . . . failure to train [or] supervise . . . involve the same basic

11

elements: inadequacy, deliberate indifference, and causation." *Snow v. City of El Paso, Texas*, 501 F. Supp. 2d 826, 833 n. 5 (W.D. Tex. 2006) (citations omitted).

"The failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Valle*, 613 F.3d at 544 (quoting *Bryan County*, 219 F.3d at 457). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* (quoting *City of Canton*, 489 U.S. at 390). Additionally, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).

"[D]eliberate indifference is a stringent standard of fault, requiring [allegations] that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation and quotations omitted). Plaintiffs "must show that 'in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Valle*, 613 F.3d at 547 (quoting *City of Canton*, 489 U.S. at 390). In *Connick*, the Supreme Court summarized this standard as follows:

> Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's "policy of inaction" in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution. A less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities[.] . . . *see also* [*Pembaur v. City of Cincinnati*, 475 U.S. 469, 483

12

(1986)] (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials ...").

A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Connick*, 563 U.S. at 61–62 (citations and quotations mostly omitted).[3]

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61 (2011) (citation omitted). The Supreme Court advises that the heightened standard of fault and causation for these claims is intended to prevent federal courts from engaging "in an endless exercise of second-guessing municipal employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism." *City of Canton*, 489 U.S. at 392 (citation omitted).

### 5. *Need for an Underlying Constitutional Violation*

"The Supreme Court has explained that a municipality cannot be liable '[i]f a person has suffered no constitutional injury at the hands of the individual police officer.'" *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Thus, official capacity "claims fail without an underlying constitutional violation." *Whitley v. Hanna*, 726 F.3d 631, 648–49 (5th Cir. 2013) (citing *Bustos*, 599 F.3d at 467 ("Because [plaintiff] has alleged no constitutional injury attributable to the Officers, [plaintiff] has failed to

13

state a claim that a City policy was the moving force behind a violation of his constitutional rights.")).

### 6. Ratification[6]

An authorized policymaker approves a subordinate's decision and the basis for it, such ratification is chargeable to the government entity. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 [ ] (1988). However, the Fifth Circuit has limited the theory of ratification to "extreme factual situations." *Peterson*, 588 F.3d 838, 848 (5th Cir. 2009) (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)).

Further, the Fifth Circuit has "explained that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Id.* (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161–62 (5th Cir. 1986)); *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) ("Good faith statements made in defending complaints against municipal employees do not demonstrate ratification.").

In *Peterson*, the Fifth Circuit explained:

> In *City of St. Louis v. Praprotnik*, a case on which [plaintiff] relies [and which is the basis of ratification liability], the Supreme Court emphasized that "[s]imply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy...." [485 U.S. 112, 130 (1988)]. Additionally, "the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority. . . ." *Id. See also Kibbe v. City of Springfield*, 777 F.2d 801, 809 n.7 (1st Cir. 1985) ("The [district] court suggested that the City had ratified defendant Perry's action by clearing him and finding that he had acted in accordance with the police department's policies. We are unconvinced that a failure to discipline Perry or other officers amounts to the sort of ratification from which a jury properly could infer municipal policy.").

---

[6] The law in this section generally comes from *Imani*, 614 F. Supp. at 364–65.

14

588 F.3d at 848–49 n.2. *See also Milam v. City of San Antonio*, 113 F. App'x 622, 627 (5th Cir. 2004) (quoting to the same propositions from *Praprotnik* and explaining that "[s]uch limitations on municipal liability are necessary to prevent the ratification theory from becoming a theory of *respondeat superior*, which theory *Monell* does not countenance"). Furthermore, the Fifth Circuit has held that "[i]t is nearly impossible to impute lax disciplinary policy to [a governmental entity] without showing a pattern of abuses that transcends the error made in a single case." *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) (quoting *Piotrowski*, 237 F.3d at 582) (affirming the district court's dismissal of the plaintiff's excessive force claim against a police department).

### 7.  Single Incident Exception[7]

"A showing 'of deliberate indifference is difficult, although not impossible, to base on a single incident.'" *Skinner*, 519 F. Supp. 3d at 315 n.4 (quoting *Valle*, 613 F.3d at 549 (citation omitted)). "The 'single incident exception' is extremely narrow; a plaintiff must prove that the *highly predictable consequence* of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Id.* (quoting *Valle*, 613 F.3d at 549, emphasis by *Valle*, citations and quotations omitted). In *Connick*, the Supreme Court summarized the type of scenario envisioned by this exception:

> In *Canton*, the [Supreme] Court left open the possibility that, "in a narrow range of circumstances," a pattern of similar violations might not be necessary to show deliberate indifference. The Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force. Given the known frequency with which police attempt to arrest fleeing felons and the "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the "highly predictable consequence," namely, violations of

---

[7] This law is substantially taken from *Murray v. LeBlanc*, 629 F. Supp. 3d 437, 456 (M.D. La. 2022) (deGravelles, J.).

15

constitutional rights. The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations.

*Connick*, 563 U.S. at 63–64 (internal citations omitted). Similarly, the Fifth Circuit discussed its case law on the single incident exception in *Valle*:

In the one case in which we found a single incident sufficient to support municipal liability, there was an abundance of evidence about the proclivities of the particular officer involved in the use of excessive force. *See Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir. 2000) (finding deliberate indifference based on the police officer's known "personal record of recklessness and questionable judgment," inexperience, exuberance, and involvement in forcible arrest situations). On the other hand, we have rejected claims of deliberate indifference even where a municipal employer knew of a particular officer's propensities for violence or recklessness. *See, e.g.*, [*Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382–85 (5th Cir. 2005)] (finding no deliberate indifference even though city was aware that officer fired weapon inappropriately, had a propensity for violence, and had received citizen complaints about the officer); *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (rejecting claim of deliberate indifference even though evidence showed officer was extremely stressed, may have had a quick temper, and was aggressive). This court has been wary of finding municipal liability on the basis of a single incident to avoid running afoul of the Supreme Court's consistent rejection of *respondeat superior* liability. *See, e.g., Pineda*, 291 F.3d at 334–35 (noting that the court rarely finds municipal liability for a failure to train claim on the basis of a single incident).

*Valle*, 613 F.3d at 549.

"The single incident exception requires proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights and the need for additional or different police training." *Id.* (citations omitted). "Indeed, in considering the single-incident exception, [s]everal panels of [the Fifth Circuit] . . . have reviewed cases where a decision not to train was made long before the alleged violation, and found that the lack of any similar violations indicates that a violation could not be the 'highly predictable consequence of failing to train." *Id.*

16

at 550 (cleaned up). "This approach reflects common sense: if there have been thousands of opportunities for municipal employees to violate citizens' constitutional rights, and yet there have been no previous violations, then the need for training is simply not 'so obvious.'" *Id.* (cleaned up).

### G.  Supervisor Liability[8]

"A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Id.* (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted, alterations and emphasis in *Gates*)).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)). "Deliberate indifference requires a showing of more than negligence or even gross negligence." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)). "'Actions and

---

[8] This law largely comes from *Skinner v. Ard*, 519 F. Supp. 3d 301, 317–18 (M.D. La. 2021) (deGravelles, J.), except the last paragraph, which comes from *Jordan*, 593 F. Supp. 3d at 361.

decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.'" *Id.* (quoting *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

Additionally, "[a] failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Porter*, 659 F.3d at 446 (quoting *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992)). Nevertheless, "[l]iability for failure to promulgate policy . . . require[s] that the defendant . . . acted with deliberate indifference." *Id.* As the Fifth Circuit stated with respect to "failure-to-train" claims:

> To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes ... employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in *de facto respondeat* superior liability.

*Porter*, 659 F.3d at 447 (citations, alterations, and quotations omitted).

Ultimately, for supervisors not personally involved in the alleged constitutional violations, the legal elements of an individual's supervisory liability and a municipality's liability for failure to train and/or supervise are similar enough such that the same analysis applies to both individual and official capacity claims. *See Lively v. Theriot*, No. 13-2756, 2015 WL 3952159, at *9 n.7 (W.D. La. June 29, 2015) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452–54 nn.7–8 (5th

Cir. 1994)) (en banc); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("The standard applicable to failure to train allegations against supervisors is based on that for municipal liability." (citing *Doe*, 15 F.3d at 452–54 and nn.7–8)).

Finally, if a plaintiff fails to establish a claim against individual deputies, then he has also failed to satisfy the causation element of a Section 1983 claim against a superior for failure to train and supervise. *See Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 244–45 (5th Cir. 2021) (citing *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006) ("[i]t is facially evident that [the test for supervisory liability] test cannot be met if there is no underlying constitutional violation.")).

### III. LOUISIANA STATE LAW CLAIMS

#### A. False Arrest and False Imprisonment[9]

"Under Louisiana law, '[f]alse arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority. Simply stated, it is restraint without color of legal authority.'" *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 514 (M.D. La. 2013) (quoting *Kyle v. City of New Orleans*, 353 So. 2d 969, 971 (La. 1977)). "[I]f police officers act pursuant to statutory authority in arresting and incarcerating a citizen, they are not liable for damages for false arrest and imprisonment." *Id.* (quoting *Kyle*, 353 So. 2d at 971). *See also* La. Code Crim. Proc. arts. 213 (describing circumstances of warrantless arrest), 215.1 (describing circumstances of *Terry* stop).

This Court's analysis to Plaintiff's § 1983 false imprisonment and false arrest claims applies with equal force to the state law claims. *See Elphage*, 969 F. Supp. 2d at 515 (citing *Harrison v. State Through Dept. of Pub. Safety and Corr.*, 97-1086 (La. 12/1/98), 721 So. 2d 458, 462–63;

---

[9] The law in this section is generally taken from *Imani*, 614 F. Supp. 3d at 381–82.

*O'Dwyer v. Nelson*, 310 F. App'x 741, 745 n.4 (5th Cir. 2009) (finding that, because Fourth Amendment principles underpin Louisiana law relating to false arrests, the Fourth Amendment inquiry was applicable to both O'Dwyer's federal and state law claims (citing *Harrison*, 721 So. 2d at 462–63)). *See also Curran v. Aleshire*, 67 F. Supp. 3d 741, 754 (E.D. La. 2014) (dismissing federal and state false arrest, false imprisonment, and malicious prosecution claims as *Heck*-barred).

### B. Malicious Prosecution[10]

The elements of a Louisiana state law malicious prosecution claim are: "(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff." *Lemoine v. Wolfe,* 2014–1546 (La. 3/17/15); 168 So. 3d 362, 367.

Ordinarily, the plaintiff bears the burden of proof for all elements of a malicious prosecution claim. However, where the prosecutor has dismissed the charge prior to trial, there is a presumption of lack of probable cause and malice, and the defendant bears the burden of proving he acted on probable cause and without malice. *See, e.g., Hope v. City Of Shreveport,* 37,759 (La. App. 2 Cir. 12/17/03); 862 So.2d 1139, 1143.

In *Lemoine v. Wolfe*, the Louisiana Supreme Court held that a voluntary dismissal of criminal charges pursuant to La. Code Crim. Proc. art. 691 (a *nolle prosequi* ) generally is a bona fide termination in the plaintiff's favor for purposes of a subsequent malicious prosecution action. 168 So. 3d at 368–72. Certain exceptions apply:

---

[10] The law in this section is substantially taken from *Golden v. Columbia Cas. Co.*, No. 13-547-JWD, 2015 WL 3650761, at *29 (M.D. La. June 11, 2015) (deGravelles, J.).

20

> [u]nder the Restatement, for purposes of the termination requirement of a malicious prosecution claim, a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a nolle prosequi, . . . unless the abandonment is for reasons not indicative of the innocence of the accused, such as when the nolle prosequi is the result of an agreement or compromise with the accused . . ., misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial.

*Id.* at 370 (citing Restatement (Second) of Torts §§ 659, 660, 661 (1977)).

### C.  Intentional Infliction of Emotional Distress ("IIED")[11]

Under Louisiana law, Plaintiff must establish the following to recover for IIED: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

As to the first requirement, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id.*

As to the second element, "[t]he distress suffered must be such that no reasonable person could be expected to endure it. Liability arises only where the mental suffering or anguish is extreme." *Id.* at 1210 (citations omitted).

---

[11] The law in this section was taken from *Imani*, 614 F. Supp. 3d at 377–78.

21

As to the final prong, "[l]iability can arise only where the actor desires to inflict severe emotional distress or where he knows that such distress is certain or substantially certain to result from his conduct." *Id.* (citation omitted). "The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." *Id.*

### D.  Intentional Misrepresentation

"The elements of a claim for intentional misrepresentation in Louisiana are: (1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury." *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir. 2008) (emphasis omitted) (citing *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 627 (5th Cir. 1999)). Here, the key issue is whether Plaintiff can recover for intentional misrepresentations when the alleged misrepresentations were made to and relied upon by a third party.

"[I]t is unclear under Louisiana law whether plaintiff can state a claim for fraud by alleging [ ]he was injured when third-parties justifiably relied on defendant's false statements." *Russell v. Chevron U.S.A., Inc.*, No. 18-4157, 2018 WL 4816151, at *3 (E.D. La. Oct. 4, 2018) (Vance, J.) (citing *Currier v. Entergy Servs., Inc.*, No. 11-2208, 2014 WL 1093687, at *8-9 & n.17 (E.D. La. Mar. 14, 2014) (Feldman, J.) (expressing skepticism that a fraud claim alleging third-party reliance is legally viable under Louisiana law); and then citing *Schaumburg v. State Farm Mut. Auto Ins. Co.*, 421 F. App'x 434, 442 (5th Cir. 2011) ("Louisiana jurisprudence indicates that the following are the elements of the tort of fraud . . . 3. reasonable or justifiable reliance by *the plaintiff . . .*") (emphasis added); *but also citing LeJeune v. Paramount Nissan, LLC*, 102 So. 3d 203, 208 (La. App. 3 Cir. 2012) (plaintiff stated a viable cause of action for fraud against car dealer who

22

fraudulently misrepresented the plaintiff's job title and income to third-party credit agency, which resulted in injury to the plaintiff)). However, the majority of cases to address this issue have found that a plaintiff cannot base a claim for intentional misrepresentation based on this third-party reliance. *See Flettrich v. Chevron Oronite Co., L.L.C.*, No. 21-1986, 2022 WL 1320433, at *9–10 (E.D. La. May 3, 2022) (Lemelle, J.) ("the claim must still be dismissed given its basis on third-party reliance, which is not legally cognizable under Louisiana law." (citing *Currier*; and then citing *Schaumburg*; and also citing *Wright v. United Parcel Serv., Inc. (Ohio)*, No. 3:20-CV-00098, 2020 WL 1909973, *4 (W.D. La. Apr. 2, 2020) (Hayes, M.J.) ("[T]he plaintiff must have been the person who reasonably or justifiably relied on the misrepresentation of fact. . . . Here, the amended complaint does not set forth any facts to show that Dickens or McCarty made any misrepresentations of material fact to *plaintiff* that *she* reasonably relied upon. . . . Accordingly, this claim fails."), *report and recommendation adopted*, No. 3:20-CV-0098, 2020 WL 1906843 (W.D. La. Apr. 17, 2020); and also citing *R. Christopher Goodwin & Assocs., Inc. v. SEARCH, Inc.*, No. CV 19-11290, 2019 WL 5576834, at *5 (E.D. La. Oct. 29, 2019) (Zainey, J.) ("Plaintiff admits that if misrepresentations about authorship were made, those misrepresentations were made to others (unidentified in the complaint) and not to Plaintiff. . . . Plaintiff cannot satisfy the reasonable and justifiable reliance element of the tort of fraud . . . . The motion to dismiss will be GRANTED as to the fraud and fraudulent misrepresentation claims.")). *See also Flettrich v. Chevron Oronite Co., L.L.C.*, No. CV 21-1986, 2022 WL 1320434, at *6 (E.D. La. May 3, 2022) (Lemelle, J.) ("Fraud claims based on third-party reliance are not legally cognizable under Louisiana law." (citing same authority as other *Flettrich* decision).

Signed in Baton Rouge, Louisiana, on July 1, 2026.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**